IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| MICKEY LYNN MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 7:17-cv-0177-LSC |
| | ) | |
| NANCY BERRYHILL, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.    Introduction

The plaintiff, Mickey Lynn Mitchell, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Supplemental Security Income ("SSI"), a period of disability, and Disability Insurance Benefits ("DIB"). Mr. Mitchell timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Mitchell was 47 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has an eleventh grade education. (Tr. at 65.) His past work experiences include employment as a carpenter and a pest exterminator. (Tr.

at 65-66, 209.) Mr. Mitchell claims that he became disabled on May 19, 2013, due to arthritis, diabetes, neuropathy, high blood pressure, and shoulder pain. (Tr. at 208.) May 19, 2013, is the day after the date that the Commissioner issued a final decision determining that Mr. Mitchell was not disabled on an earlier application.

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's

impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Mitchell was insured through September 30, 2014. (Tr. at 41.) He further determined that Mr. Mitchell has not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's diabetes with neuropathy, sleep apnea, hypertension, history of shoulder injury, and degenerative disc disease are considered "severe" based on the requirements set forth in the regulations. (Tr. at 42.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 43.) Further, he determined that Mr. Mitchell has the following RFC: performance of light, unskilled work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b); he

could have frequent interaction with co-workers, supervisors, and the general public; he cannot do any climbing of ropes, ladders or scaffolds; he cannot work at unprotected heights or with hazardous machinery; he cannot do more than occasional stooping, crouching, or crawling; he cannot do more than occasional overhead reaching bilaterally; and he cannot be exposed to dust, fumes, or other respiratory irritants. (Tr. at 44.)

According to the ALJ, Mr. Mitchell is unable to perform any of his past relevant work, he is a "younger individual age 18-49," he has a "limited education," and he is able to communicate in English, as those terms are defined by the regulations. (Tr. at 51.) The ALJ then enlisted a Vocational Expert and used Medical-Vocational Rule 202.18 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as general office clerk, assembler, and packer. (Tr. at 52.) The ALJ concluded his findings by stating that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 19, 2013, through the date of this decision." (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Mitchell argues that the Commissioner's decision should be reversed and remanded for one reason: the ALJ's finding that his subjective complaints of pain were not credible is not supported by substantial evidence. Plaintiff also mentions several times in passing that additional evidence presented to the Appeals Council after the ALJ's unfavorable decision should have been considered. The Court will address both arguments.

### A. Credibility Determination

At his hearing, Mr. Mitchell testified that he could not work due to pain in his back and his shoulders. (Tr. at 66). He stated that his back felt like "two blocks grinding against each other . . . . I get a really bad, sharp pain in my back and I have to sit down." (*Id.*) With regard to his shoulder, Mr. Mitchell said that he fell off of his roof, and "I ripped up my left side up—rotator cuff. And they did surgery, and

it didn't grow back correctly. They said there wasn't any guarantee, if they went back in there, that it would—ever grow back correctly." (Tr. at 67, 69). Mr. Mitchell testified that, on a scale of one to ten, his average pain was a seven, which he experienced for at least five hours during a nine-hour work period, including breaks. (Tr. at 69-70, 72-73). He said that he sat in a recliner with his legs elevated for up to five hours during the same nine-hour work period to attempt to manage his pain. (Tr. at 73).

Mr. Mitchell also described his activities of daily living. He lived with his employed wife, daughter and stepson. (*Id.*) His wife got the children ready for school each morning. (*Id.*) He would greet them when they got home from school, but his 16-year-old stepson would tend to care for his six-year-old daughter's needs, such as getting after school snacks. (*Id.*) His pain prevented him from engaging in any heavy cleaning around the house. (Tr. at 73-74). He could occasionally go to the grocery store but the main bulk of the shopping was done by his wife and stepson. (Tr. at 69, 74.) Due to pain, he was prevented from lifting his daughter. (Tr. at 69.) He had not hunted or fished for five years prior to his hearing, something he used to routinely enjoy. (Tr. at 74-75). His church attendance had been curtailed due to his narcolepsy and resultant snoring. (Tr. at 75). He would often fall asleep while waiting for doctors' visits, only to wake up with patients

around him snickering. (Tr. at 76). He had stinging neuropathic pain in his hands and feet, between a seven and eight on the one-to-ten pain scale. The pain felt like fire one minute and needles the next. (Tr. at 76-77).

When a plaintiff attempts to prove disability based on his subjective complaints, he must provide evidence of an underlying medical condition and either objective medical evidence confirming the severity of his alleged symptoms or evidence establishing that his medical condition could be reasonably expected to give rise to his alleged symptoms. *See* 20 C.F.R. § 416.929d(a), (b); Social Security Ruling ("SSR") 96-7p; *Wilson v. Barnhart*, 284 F.3d 1219, at 1225–26 (11th Cir. 2002). If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce his alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work. *See* 20 C.F.R. § 416.929(c), (d); SSR 96-7p; *Wilson*, 284 F.3d at 1225-26. This entails the ALJ determining a claimant's credibility with regard to the allegations of pain and other symptoms. *See id.* The ALJ must "[explicitly articulate] the reasons justifying a decision to discredit a claimant's subjective pain testimony." *Moore v. Barnhart*, 405 F.3d 1208, 1212 n.4 (11th Cir. 2005). "When the reasoning for discrediting is explicit

and supported by substantial evidence, "the record will not be disturbed by a reviewing court." *Foote v. Chater,* 67 F.3d 1553, 1562 (11th Cir. 1995). The Commissioner's regulations set forth the following factors an ALJ should consider when evaluating a claimant's symptoms: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) any precipitating and aggravating factors; (4) medications taken to alleviate pain, including side effects and effectiveness; (5) treatment received to relieve pain; and (6) any other measures the claimant uses to relieve pain. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (2016). The ALJ evaluates these factors in connection with the other evidence in the record to make a credibility determination. 20 C.F.R. § 404.1529(c)(4).

In this case, the ALJ found that Mr. Mitchell met the first prong of the Eleventh Circuit's pain standard in that he presented evidence of an underlying medical condition(s). The ALJ did not find, however, that the evidence confirmed the severity of the alleged pain arising from Mr. Mitchell's conditions or that any impairment of such severity could reasonably be expected to give rise to the disabling pain and other limitations alleged by him.

Substantial evidence supports the ALJ's credibility determination. As an initial matter, any references Plaintiff makes to medical records and pain

complaints made before May 18, 2013, his alleged onset date, have little relevance to the present application, considering Plaintiff already received a finding of not disabled for that time period. Indeed, Plaintiff regularly presented to the Maude Whatley Health Clinic both before and after his alleged onset date, which again, was one day after he received an unfavorable decision on his first disability benefits application. (Tr. at 279-393, 403-19, 420-41). Most importantly, Plaintiff has failed to demonstrate that his pain worsened after May 18, 2013. A review of the medical record reveals that his subjective complaints of pain were consistent before and after his alleged onset date, and there is no indication his pain worsened after May 2013. For example, Plaintiff reported various back, leg, shoulder, and foot pain prior to May 18, 2013, which included, at discrete times, complaints of decreased hand strength, hand pain, joint swelling, leg pain, foot pain/numbness, and musculoskeletal pain. (Tr. at 278, 279, 281, 294, 314-17, 329-31, 336-39, 340-43, 358-61). Plaintiff's treatment regimen was conservative and consisted of medication management in each instance. (Tr. at 278, 279, 281, 294, 314-17, 329-31, 336-39, 340-43, 358-61).

Despite the fact that Plaintiff underwent an MRI of his spine in April 2013, shortly before his alleged onset date, his subsequent treatment for back pain remained conservative. (Tr. at 44-50, 452-53.) According to the MRI report, the

disc space in Plaintiff's spine was normal for his age, although he did have bone spurs and some thickening and hardening of his spinal ligaments as well as some narrowing of the facet joints in his spine. (Tr. at 453). Plaintiff did not have any disc herniation or fractures. (*Id.*) On May 9, 2013, less than two weeks before his alleged date of onset, Plaintiff did not demonstrate back pain or muscle weakness on examination. (Tr. at 380). His chronic conditions (back pain, hypertension, and diabetes) were noted as stable with no changes. (Tr. at 381). Plaintiff's treatment consisted only of medication, diet restrictions, and moist heat for his pack pain, as needed. (*Id.*) The Eleventh Circuit has repeatedly held that medical treatment that is conservative in nature undermines a finding of disability based on pain. *See, e.g., Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996).

Indeed, while Plaintiff sought treatment for back pain again in January, April, July, and October 2014, each time, prescribing medication was the only regimen indicated by the physician. (Tr. at 403-05, 414). In April it was noted that Plaintiff had a normal gait and demonstrated no edema or motor deficits. (Tr. at 405.) In December 2014 Plaintiff twice sought treatment for back pain that was moderate to severe, and the examiner's treatment notes indicate that Plaintiff's problem is stable and has existed for five years. (Tr. at 425, 429.) At both December 2014 visits, Plaintiff did not demonstrate any problems walking, weakness or numbness

in his arms or legs, joint pain, joint swelling, or muscle weakness. (Tr. at 426, 430-31). Plaintiff had moderate restriction on his flexion and extension of the spine, as well as a limited active range of motion. (Tr. at 427, 431). Plaintiff's medications were adjusted to address his pain complaints, and he was scheduled for massage therapy as well as chiropractic manipulation. (Tr. at 425, 427, 431). In January 2015, an office visit report indicated his knee joint pain was intermittent and stable and that he had no changes in his chronic problems. (Tr. at 420). Plaintiff's neurological examination was normal and he had no complaints of back pain, although his lumbar back was tender. (Tr. at 421-22). Plaintiff's treatment was limited to medication management, and he was advised to engage in physical activity at least three times a week for 30 minutes. (Tr. at 420-22.) The ALJ noted that the recommendation to exercise regularly "would not be instructed if the clinical objective findings were as severe as alleged" by Mr. Mitchell. (Tr. at 46.)

Similarly, although Plaintiff alleges his shoulder pain worsened significantly after May 19, 2013, the evidence does not support that allegation. An August 2014 MRI of the right shoulder, which he had done two weeks after sustaining a fall, indicated a probable bone bruise and degenerative changes, along with complete and partial tears of three tendons as well as mild joint effusion. (Tr. at 266). The medical records do not indicate Plaintiff had any follow up treatment for these

conditions. As the ALJ noted, Plaintiff was not referred to an orthopedic or shoulder specialist based on these MRI results. (Tr. at 49). The treatment reports from Maude Whatley Health Clinic dated after August 2014 indicate Plaintiff complained of back pain, but no joint pain, joint swelling, muscle weakness, or neck pain. (Tr. at 426, 430-31, 435, 439). At each physical examination, Plaintiff did not have any abnormalities noted with respect to his arm or shoulder. (Tr. at 427, 430-31, 435, 439). In January 2015, at Plaintiff's last physical examination before the ALJ issued his opinion, Plaintiff's only musculoskeletal limitations were tenderness in his lumbar spine and in both knees. (Tr. at 422).

Nor has Plaintiff demonstrated that his complaints regarding his obstructive sleep apnea are supported by substantial evidence. Specifically, treatment notes indicate that he was diagnosed with sleep apnea on September 3, 2014. (Tr. at 400.) His sleep apnea was controlled with the use of a CPAP (continuous positive airway pressure) machine. (Tr. at 421). Follow up treatment notes indicate he was simply being monitored for sleep apnea and was still using his CPAP. (Tr. at 422). No ongoing problems were noted.

Additionally, with regard to Plaintiff's subjective allegations that his hypertension is not well-controlled, medical records indicate Plaintiff's hypertension was controlled with medication on a consistent basis. (Tr. at 273, 275,

276, 277, 279, 28, 283, 284, 285, 362, 381). Moreover, there is no evidence of any specific symptoms related to his hypertension that translate to functional limitations greater than those found by the ALJ.

Plaintiff also argues that the ALJ improperly considered his self-reported daily activities in determining that his was not entirely credible. While a claimant's ability to participate in activities of daily living in short duration is not dispositive of a finding of disability or non-disability, it is one factor that an ALJ may consider in making the ultimate determination. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3) (specifically listing daily activities as one of the factors to consider in evaluating a claimant's credibility).

However, the ALJ actually discussed Plaintiff's self-reported daily activities within the portion of his opinion finding that Plaintiff did not have a severe mental impairment per the Psychiatric Review Technique ("PRT") at steps two and three, not during his credibility determination at step four. (Tr. at 43-43.) A severe impairment is an impairment that significantly limits a claimant's physical or mental abilities to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521(a); SSR 96-3p; *Bridges*, 815 F.2d at 625. Examples of basic work activities are physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking;

understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. SSR 85-28. An impairment must be severe for at least 12 consecutive months to be considered a severe impairment at step two of the sequential evaluation process. *See* 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(ii); SSR 96-3p. The claimant bears the burden of proving that an impairment is a severe impairment. *See Doughty*, 245 F.3d at 1278. Meanwhile, a non-severe impairment is "merely a slight abnormality which has a minimal effect on the general ability to work." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). The PRT requires the ALJ to evaluate a claimant's mental condition in terms of activities of daily living; social functioning; concentration, persistence or pace; and decompensation. *See* 20 C.F.R. §§ 404.1520, 416.920. Again, PRT ratings are not an assessment of a claimant's RFC; instead, they are used to rate the severity of a claimant's mental impairments at steps two and three of the sequential evaluation process *See* 20 C.F.R. §§ 404.1520, 416.920.

Substantial evidence supports the ALJ's findings with regard to Plaintiff's daily activities and whether he had a severe mental impairment. Following the PRT, the ALJ first noted Plaintiff has no more than a mild restriction in activities of

daily living. (Tr. at 42). Specifically, the ALJ noted Plaintiff drives, uses a riding lawn mower, prepares simple meals, goes shopping with his wife, and takes care of most of his personal hygiene with some assistance from his wife. (*Id.*) Continuing to social functioning, the ALJ determined Plaintiff has no more than a mild restriction. (*Id.*) Plaintiff reported he talks with his wife and children daily, and visits with his parents several times a week. The ALJ also noted there is no indication Plaintiff has isolated himself from others based on mental issues. (Tr. at 43). The ALJ then concluded Plaintiff has no more than mild limitations with concentration, persistence, or pace. (*Id.*) Plaintiff watches television and reads, pays bills, and counts change. The ALJ found there is no indication that any depression or anxiety causes more than a mild difficulty in this area. (*Id.*) Finally, with regard to decompensation, the ALJ noted the record does not document any episodes of decompensation. (*Id.*) The record supports the ALJ's conclusions on this point. Specifically, Plaintiff's psychiatric evaluations at Maude Whatley Health Clinic revealed no depression or anxiety complaints after May 18, 2013. Plaintiff consistently displayed normal mood and affect and was oriented to time, place, person, and situation. (Tr.at 390, 391, 404, 405, 414, 421, 427, 431, 434, 435, 438, 439). Moreover, there was little to no change in Plaintiff's medication regimen to

address his depression. (Tr. at 390, 391, 404, 405, 414, 421, 427, 431, 434, 435, 438, 439).

In sum, the Commissioner's credibility determination is subject only to limited review in the courts to ensure that substantial evidence supports the ALJ's finding. *See Hand v. Heckler*, 761 F.2d 1545, 1548-49 (11th Cir. 1985), vacated for rehearing en banc, 774 F.2d 428 (11th Cir. 1985), reinstated sub nom. *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Here, the ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting Plaintiff's testimony.

## B.    Additional Evidence Submitted to Appeals Council

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council has the discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. § 416.1470(b). However, "[t]he Appeals Council *must* consider new, material and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Ingram*, 496 F.3d at 1261 (emphasis added); *see also* 20 C.F.R. §§ 404.970(b), 416.1470(b). When considering the Appeals Council's

denial of review, a reviewing court considers such new evidence, along with all the other evidence in the record, to determine whether substantial evidence supports the ALJ's decision. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b); *Ingram*, 496 F.3d at 1266. Evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see McGriff v. Comm'r of Soc. Sec.*, 654 F. App'x 469, 472 (11th Cir. 2016) (Appeals Council did not err in refusing to consider new evidence that related to a time period after the date of the ALJ's decision); *Clough v. Comm'r of Soc. Sec.*, 636 F. App'x 496, 497-98 (11th Cir. 2016) (affirming district court's determination that evaluations conducted after the ALJ's decision concerned "a later time" and thus were not chronologically relevant). In *Washington v. Comm'r of Soc. Sec.*, however, the Eleventh Circuit announced that examinations conducted after an ALJ's decision may still be chronologically relevant if they relate back to the period before the ALJ's decision and provide new, noncumulative evidence. 806 F.3d 1317, 1323 (11th Cir. 2015).

In this case, Plaintiff submitted additional medical records to the Appeals Council in support of his request for reconsideration of the ALJ's unfavorable decision. (Tr. at 15-23, 24-33). These records postdated the ALJ's May 14, 2015, decision by over a year. Specifically, the report from the Clinic for Rheumatic

Diseases ("CRC") is dated July 2016, and the reports from University Orthopedic Clinic and Spine Center ("University Clinic) are August 8, 2016, and August 9, 2016. (Tr. at 15-23, 24-33). The Appeals Council determined that these records did not provide a basis for changing the ALJ's decision because they related to a later time period. (Tr. at 2). The Appeals Council advised Plaintiff that if he wanted the agency to consider whether he was disabled after May 14, 2015, he needed to submit new applications. (*Id.*)

Plaintiff argues that these medical records should be viewed as relating back to his condition during the relevant period (May 2013 through September 2014) and showing that his condition deteriorated even further. The Court disagrees. Plaintiff's July 25, 2016, CRC treatment report indicated he fell in his bathtub on July 20, 2016, and reported "increased pain to his left shoulder, neck, and hips since the fall with the left shoulder pain being severe." (Tr. at 15). X-rays of his neck, pelvis, and shoulder indicated abnormalities, and he complained of anxiety and depression, as well as ankle swelling, back pain, joint pain, morning stiffness, muscle weakness, neck pain and numbness in his extremities. (Tr. at 16-17). On examination, Plaintiff was observed using a cane, and the examiner documented numerous musculoskeletal limitations that were not present on examination during the time considered by the ALJ. (Tr. at 18). Plaintiff's depression was reported to

be recurrent but mild. (Tr. at 20). Plaintiff was continued on his current medication and provided with dietary education, guidance, and counseling. (Tr. at 20).

The treatment reports from University Clinic also discuss the fact that Plaintiff's fall in July 2016 caused increased issues. Specifically, Plaintiff complained of increased sharp pain in his right shoulder occurring on activity, pain in the left shoulder, and constant sharp pain in the left hand. (Tr. at 24, 32). On examination, Plaintiff's shoulders were normal with no swelling, crepitus, atrophy, or other abnormalities present, although he had a restricted range of motion based on pain. (Tr. at 26-27). Plaintiff presented with trigger finger on his left hand, but the rest of the hand examination was normal. (Tr. at 28). This condition was not documented in the medical reports from the relevant period. An MRI of his left shoulder indicated he had tendon tears and a degenerative ganglion cyst formation near the joint. (Tr. at 29). Similarly, these abnormalities were not recorded in any of the medical records related to Plaintiff's shoulders prior to this report.

These conditions were not present during the time considered by the ALJ. Rather, these additional treatment notes indicate a worsening of Plaintiff's condition after May 2015. Plaintiff's treating source recommended surgical intervention to address his finger and shoulder limitations. (Tr. at 29). Plaintiff had both surgeries on August 30, 2016. (Tr. at 31). As the records presented to the ALJ

indicate, surgical intervention was never recommended before May 2015. While Plaintiff's condition may have progressively worsened after May 2015, remand of the current application is not appropriate. Plaintiff is not, however, without recourse. As the Appeals Council advised, if his condition has declined since the final decision on these applications, he may reapply for benefits as of the date of the new application.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mr. Mitchell's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON MARCH 8, 2018.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
160704